UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ELAINE L. CHAO, Secretary of Labor,

        Plaintiff,                  Case No. 1:05-CV-845

v.                                         HON. GORDON J. QUIST

ROGER KROPF, et al.,

        Defendants.
_____/

**OPINION**

Plaintiff, Elaine Chao, Secretary of Labor, U.S. Department of Labor ("Secretary"), brought this action against Defendants, Roger Kropf, Kropf Orchards and Storage, Inc. ("Kropf Orchards"), Appletree Farms, LLC, successor to or, in the alternative, alter ego of Kropf Orchards and Storage, Inc., and the Appletree Farms, LLC Employees' Profit Sharing Plan and Trust f/k/a Kropf Orchards and Storage, Inc. Employees' Profit Sharing Plan and Trust (the "Plan"), pursuant to §§ 502(a)(2) and (a)(5) and 409 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (5) and 1109.  Now before the Court are the Secretary's motion for summary judgment against Roger Kropf and Roger Kropf's and Kropf Orchards' cross-motion for summary judgment.  For the following reasons, the Court will grant in part and deny in part the Secretary's motion and grant in part and deny in part the Defendants' motion.

**I. Background**

Kropf Orchards was a Michigan corporation located in Lowell, Michigan.  Roger Kropf and his now-deceased brother, Kenneth, served as vice president and president, respectively, of Kropf Orchards.  Kropf Orchards established the Plan in 1979, with Roger and Kenneth Kropf serving as

joint trustees of the Plan until Kenneth's death in March 2001, at which time Roger became sole trustee.  Kropf Orchards was the administrator of the Plan until September 19, 2003.[1]

In November and December 1999, Roger and Kenneth Kropf instructed the Plan custodians, Baird and Warner, Inc., to transfer the securities it held in the Plan's account, valued at $687,218, to International Mercantile Corporation.  These securities were used as collateral to obtain a $570,000 loan to Kropf Orchards, the proceeds of which were deposited into a Kropf Orchards business account on January 10, 2000.

Kenneth Kropf died in March 2001, at which time Roger Kropf received about $500,000 in life insurance proceeds.  In April and May 2001, Roger Kropf used these insurance proceeds to purchase and replace the securities that were removed from the Plan in 1999.  While Roger Kropf purchased the same types and amounts of securities that were removed from the Plan in 1999, the value of the securities had diminished from $687,218 to roughly $412,000.

Criminal charges related to the prohibited transfer were brought in this district against Roger Kropf in November 2004.  (Case No. 1:04-cr-255.)  Roger Kropf pled guilty to one count of filing a false pension statement and was ordered to pay $275,218 in restitution to the Plan.  This amount constituted the difference between the value of the securities in the Plan at the time the securities were transferred in 1999 and the value of the securities when returned to the Plan in 2001.

This action was filed in December 2005, to recover lost opportunity costs to the Plan and to permanently enjoin Roger Kropf and Appletree Farms from violating the provisions of Title I of ERISA and from serving as fiduciaries to any ERISA plan.  The Secretary filed a motion for

---

[1]Appletree Farms was established by Stephen Kropf, Roger's son, as a successor to, or alter ego of, Kropf Orchards on December 19, 2001.  Appletree Farms is incorporated in Michigan and located at the same location as Kropf Orchards.  Stephen Kropf served as President of Appletree Farms and Roger Kropf served as General Manager.

summary judgment against Roger Kropf on February 9, 2007, and the Defendants responded with a cross-motion for summary judgment on March 8, 2007.[2]

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

The parties agree that there is no genuine issue as to any material fact. The Secretary alleges that Roger Kropf, in violation of his fiduciary duties to the Plan, violated the provisions of ERISA when he and Kenneth Kropf ordered the transfer of assets, in the form of securities, out of the Plan in November and December 1999, to obtain the $570,000 corporate loan for Kropf Orchards. The Defendants do not deny that the Plan was covered by ERISA and do not deny that Defendants breached their fiduciary duties. Rather than argue that there was no ERISA Plan or that Defendants were not fiduciaries of the Plan or that Defendants did not violate their fiduciary duties, Defendants

---

[2]The Secretary alleges in her response to the Defendants' cross-motion for summary judgment that the Defendants never responded to her motion for summary judgment. However, the Court construes the Defendants' cross-motion as both a motion for summary judgment and a timely-filed response to the Secretary's motion.

argue that the Plan really did not lose any money because Roger Kropf purchased and deposited for the Plan's benefit exactly the same assets that were illegally pledged to secure the $570,000 commercial loan from International Mercantile. The Secretary does not deny that the securities were replaced in kind, but argued that (1) Roger Kropf should be required to "restore lost opportunity costs (matured interest) to the Plan resulting from his fiduciary breaches," and (2) that Defendant Kropf's "debt to the Plan is non-dischargeable under 11 U.S.C. sec. 523(a)(4) by reason of defalcation."

A.   **Lost Opportunity Costs**

The Secretary is seeking damages for lost opportunity costs in the form of prejudgment interest. Under ERISA, a fiduciary who breaches a fiduciary duty to an ERISA plan

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109 (a). "Though ERISA does not address the propriety of awarding prejudgment interest, prejudgment interest may be awarded in the discretion of the district court." *Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993) (citing *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir.1982)). The purpose of awarding prejudgment interest is "not to penalize the trustee but to make plan participants whole." *United States v. Mason Tenders Dist. Council of Greater New York*, 909 F.Supp. 891, 895 (S.D.N.Y. 1995) (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir.1992)). The rate of interest "should make up the difference between 'what the plan earned during the time in question and what it would have earned had the money lost due to the breach been available.'" *Id.* (quoting *Diduck*, 974 F.2d at 286).

"Because an award of prejudgment interest is compensatory rather than punitive," the Sixth Circuit instructs that the position of the Plan and its participants should be considered, rather than the conduct of the fiduciary. *Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir.1992).

The Secretary requests an award of prejudgment interest to put the Plan in the position it allegedly would have been but for Roger Kropf's breach of his fiduciary duties. As part of the judgment in the criminal case, Roger Kropf was ordered to pay into the Plan $275,218, the difference in the value of the securities in the Plan at their withdrawal and replacement. The Secretary is asking that Roger Kropf be required to pay an additional $257,434,82 in lost opportunity costs. The Secretary calculated this amount based on the Internal Revenue Code § 6621 interest rate from the period of December 27, 1999, when the securities were withdrawn from the Plan, to October 3, 2005, the date Roger Kropf filed for bankruptcy protection.

The Secretary argues that, although Roger Kropf returned the same types and amounts of securities to the Plan and was ordered to pay the difference in the value of those securities, these actions do not restore the Plan to the position it would have been in had the breach of fiduciary duties never occurred. The Secretary claims that the Plan was left with no meaningful investments after the breach because the Plan did not receive any return on the transfer of assets to International Mercantile.

The Defendants dispute this assertion based on the return of the exact same securities to the Plan and the judgment in Roger Kropf's criminal case that ordered a payment to the Plan of the difference in the value of the securities. The Defendants assert that these actions not only returned the Plan to the position it was in prior to the breach, but possibly placed it in a better position due to the diminished value of the securities. The Defendants argue that the Secretary's claim of lost

opportunity costs is speculative and not based on any facts that support concrete damages. The undisputed facts show that the value of the securities in the Plan diminished from the time Roger Kropf transferred them out of the Plan to the time he returned them to the Plan. The Secretary speculates that had the assets not been transferred out of the Plan, Roger Kropf, as the trustee, would have transferred the assets to a more profitable investment to prevent the diminution in value. (Pl.'s Resp. to Defs.' Mot. Summ. J. 7-8.) The Secretary's argument for lost opportunity costs appears based, in part, on this presumption.[3]

The Court is convinced that it has the authority to award prejudgment interest. But this is a case of equity involving fiduciary responsibilities and 29 U.S.C. § 1109(a). In exercising its discretion, the Court has determined that it will not award prejudgment interest. Reasons for this decision follow.

This is an unusual case – the defalcating fiduciary actually returning, in kind, the property "stolen" from an ERISA plan after the market had dropped.

The purpose of awarding prejudgment interest is to compensate the Plan and its participants and to return the Plan to the position in which it would have been but for the breach of fiduciary duties. The same securities transferred out of the Plan in December 1999, were returned to the Plan in May 2001. Although an alert, informed, prescient, and lucky fiduciary might have anticipated the market decline and reallocated assets between December 1999, and May 2001, whether an ordinary, competent fiduciary would have done so is speculative. For all anyone knows, a fiduciary such as Roger Kropf would have kept the same assets, and to have done so would not have violated a

---

[3]At a minimum, the Secretary is claiming that the Plan lost the opportunity to reallocate or reinvest its assets to minimize its losses from the drop in value of the securities. However, the question of whether the Plan would have done so is speculative.

fiduciary duty. Moreover, the judgment in the criminal case ordered Roger Kropf to pay to the Plan the difference in the value of the securities, returning the Plan's value to what it had been at the time of the prohibited transfer.

Because the Court is not awarding prejudgment interest, the question of whether the requested damages may be discharged in bankruptcy is moot.

**B.     Injunctive Relief**

The Secretary has moved for a permanent injunction prohibiting Roger Kropf from serving as a fiduciary to any ERISA plan and from violating Title I of ERISA. The Court has the discretion to enter such an injunction under 29 U.S.C. § 1132(a). Defendants do not indicate any objection to the Secretary's motion for a permanent injunction.

Based on the record, the Court finds that it is proper to enjoin Roger Kropf from serving as a fiduciary to any employee benefit plan subject to Title I of ERISA and from violating Title I of ERISA. As in the cases cited by the Secretary, Roger Kropf violated the self-dealing provisions of ERISA by ordering the prohibited transaction to benefit Kropf Orchards and, in effect, himself. *See, e.g., Martin v. Felien*, 965 F.2d 660, 672 (8th Cir. 1992) (affirming permanent injunction against defendants guilty of breaching fiduciary duty by self-dealing); *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991) (affirming permanent injunction against defendants who violated ERISA provision against self-dealing). Although Roger Kropf's actions in this case were not as egregious as the actions in the cited cases (particularly because the prohibited transfer was apparently an isolated incident, the financial loss to the Plan was not as evident or severe, and the transferred assets were eventually returned to the Plan) the transfer was an act of self-dealing and was performed without regard for the Plan and its participants. And, but for brother Kenneth's death, Roger Kropf would

not have been able to replace the shares he wrongfully transferred to secure the loan.  Therefore, a permanent injunction prohibiting Roger Kropf from serving as a fiduciary to any employee benefit plan and from violating the provisions of Title I of ERISA will be issued.

### IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the Secretary's motion for summary judgment and grant in part and deny in part the Defendants' cross-motion for summary judgment.

An Order consistent with this Opinion will be issued.


Dated:  July 9, 2007                                          /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE